May it please the Court, I would like to reserve three minutes for rebuttal. Good morning, I'm Gary Fitzik, I'm an attorney from Fargo, North Dakota, and I represent As far as reserving your time, you'll just have to watch the clock and sit down when you wish. All right, I'll do that. I'm an attorney from Fargo, North Dakota, and I represent Cheryl Schwandt, the plaintiff and appellant in this appeal. Because the Social Security Act provides for judicial review of final decisions made by the Commissioner of the Social Security Administration, we recognize that this Court deals with Social Security cases on a fairly regular basis. But if there's one thing that Ms. Schwandt and the Commissioner can agree on in this case, it's that it's an unusual case. But while the Commissioner has tried to argue that the manner in which this case has progressed and was decided by the Commissioner was nothing out of the ordinary, what should be apparent is that in the Commissioner's efforts to deal with the mistake she made at the very outset, she has been willing to employ a scorched earth policy. A policy in which she's been willing to violate her own rules and regulations, has been willing to argue for broadly expansive powers of post hoc rationalization, so broad, in fact, that it would, in fact, carve out an exception to the Chenerey Doctrine for the Commissioner and the Social Security Administration, a doctrine that has been the law for 75 years. And finally, she has been willing to attempt to spin and cover up for the agency's own mistake and negligence by stating things that are simply not true. If a private insurance company had done what the Commissioner has done over the course of this claim and litigation, we would surely be talking about bad faith. And we should not forget that what we are talking about here is an insurance policy, one that is operated by the Commissioner. Cheryl Schwant purchased her insurance in the Title II Disability Insurance Program each day and every week that she was working and paying in her FICA taxes, she was purchasing this insurance. Cheryl Schwant was found disabled by the Social Security Administration. On July 5, 2012, the Social Security Administration found that Schwant was disabled as of January 1, 2012. But when the notice of award was issued, rather than stating that Schwant's disability began on January 1, 2012, the document, which is the payment center's explanation for how benefits have been calculated, said January 1, 2001. The mistake did not result in Schwant or her dependents being paid 11 years of additional benefits because the Social Security rules limit the amount of the back award to at most 12 months prior to the application for Title II benefits. But it did result in Schwant and her youngest two sons receiving a year's worth of benefits not justified by the July 5, 2012 decision. I would like to report that when the Commissioner discovered her error, she sent a detailed letter to Ms. Schwant and her sons confessing the agency's error, a letter simply saying, hey, our bad, we made a mistake. You know, we have this assistant, Sidney, and Sidney is very good at transcribing things, but on this one day, Sidney made a mistake. And Sidney said January 1, 2001 instead of January 1, 2012. We are so sorry about this because we sent you a bunch of money you shouldn't have gotten, and, you know, we'd like to have you pay this back. That's not what happened. Instead, Social Security began sending notices to Schwant and her sons demanding immediate repayment. No explanation of how this had come to be, just a demand. It is helpful to... It might have been bad manners, but why don't you get to the legal problems that you see. Okay. There are a number of legal problems. We start with the fact that she is relying on the claims representative who is the only person that she's had contact with. When she filed her initial claim, which resulted in her getting found disabled as of January 1, 2012, she was dealing with claims representative Kate Najokas. Okay. Najokas was the one that she dealt with. She got it on the first initial decision. So then she begins receiving these notices that she must repay this amount, and she doesn't know what's going on, her head spinning. And so she goes to the only person she's been working with, the claims rep, and she asks her, What's going on here? Why are they saying I've got this extra money? And Najokas tells her, I'm going to work on this. And she does work on this. She develops additional evidence indicating that for that prior year, they may have overlooked the fact that she had, in fact, been receiving a subsidy. And so that's what Najokas does, is she begins to develop evidence. This is Social Security's employee. Begins to develop evidence that, in fact, the onset date should have probably been earlier because the dental office reports that, yes, there was a substantial subsidy. So Najokas develops as a defense for Cheryl Schwant on this claim that there is an overpayment, the fact that it may not be an overpayment at all, but is, in fact, now we recognize payment for a period of time when she was subsidized and may very well have been disabled. Now, she is denied on that, the defense. With Kate Najokas' help, she asserts this defense initially and upon reconsideration, and she loses. And she then requests a hearing. She does the request for hearing on her own. When she finally retains legal counsel, legal counsel is informed by the administrative law judge that the issue of waiver of the overpayment is not before her and that the only thing that's before her is whether or not she's ever been disabled. Counsel, I wrote to the administrative law judge saying, really what's at issue here is whether or not we have a defense to this overpayment that occurred. What the judge is saying, what the administrative law judge is saying is, now we're going to look at everything, including a decision that had been raised judicata for over a year. Okay? So the first- You're still kind of just reciting to us what happened. Okay. What's wrong with the district court's order? What's the error? Okay, so the error in the district court is a number of things. Number one, they did not properly reopen the prior decision. There's no notice of it that they were reopening it. They just simply said, this is our authority, we're going to do this. Okay? The administrative law judge does not even say that she's reopening. There's a little mention of a reopening by ODLOG, which is the first person to review the request for waiver. But the judge, the administrative law judge, does not say anything about reopening. So the problem here is, Your Honor, they're not following their own rules. We have regulations that say, if you're going to reopen. Now, keep in mind, this is a decision that they made, and over a year has passed, and no one has appealed from it. Okay? And they have definite regulations that they're supposed to follow. And this is at 20 CFR 404-987-988, what you have to do if you're going to reopen a prior decision. It says we may reopen on our own initiative. On your own initiative, right. Agencies. Right. But we didn't know they were doing that. There's no notice that they're going to reopen. And, in fact, she doesn't reopen. In fact, in her administrative law judge decision, she says, I'm basing my ability to look at this and determine whether or not that July 5, 2012 decision was decided correctly because of HALACS. Now, HALACS is a procedural guideline, but there's no authority to use HALACS as an excuse to not using 20 CFR 404-987-988. That is not a substitute for, it does not reverse your requirements to go through the reopening process that's under 20 CFR 404-987. Well, didn't your client have a pretty strong, or didn't you have a strong hint? I assume you were the attorney throughout. The October letter from the ALJ says that the relevant period of time that the ALJ would consider was December 31, 2009 through the present. And then you have the earlier one that's a little less direct, but it seems that there's at least some notice there that they're looking at the whole thing. That's right. And the response at that point is, why? I mean, we're trying to figure out what is her authority to do that. We have a race judicata decision that has not been appealed from by the government, has not been appealed from by Cheryl Schwant, and we're getting this notice that I know that you only want to talk about waiver of this initial mistake, but because you're doing that, I'm going to look at everything. Well, that goes back to Judge Colleton's on our own initiative, right? So they're doing it on their own initiative, which they're allowed to do under the regulation. And maybe they didn't really, you know, they didn't use the word reopen. They probably should have. But they say, we're looking at everything, you know, this entire time period. I'm still not seeing where they went wrong. Well, because if they had followed what they were, you know, I guess their argument is, you know, we listed a number of procedural defects in this, and I guess their argument is what you raised. They gave notice. So doesn't that cure? And that's kind of their argument. That cures everything. We don't have to follow the reopening rules. We can ex post facto. What rule didn't they follow? They didn't follow the reopening rules. What rule? 20 CFR, 20 CFR 98798. Well, that just says we may reopen on our own initiative. They reopened on their own initiative. We don't know that, Your Honor, though, until the district court briefs. Because the administrative law judge never says that beforehand, doesn't say that she's reopening. And she doesn't say it in the decision. She revisited the whole question. It's obvious she was reopening. But we don't know what authority she's using. And if she is, well, then, Your Honor, then you're allowing them to say that ex post facto we can reopen. And then we get into the cases that were cited in my brief, three cases where this idea that you can read in the fact that something has been reopened ex post facto constructively. I will note specifically that the three cases that I cited only relate to a plaintiff, an appellant, a claimant asking for constructive or de facto reopening. That has never been extended to the judge. And our argument, Your Honor, is if you're going to allow ex post facto constructive reopening after the fact. Okay, so the administrative law judge doesn't use it. All reopenings are ex post facto in that sense. I mean, whenever you reopen something, it's after the fact of the original decision. Okay, but if you don't. At the point of a reopen. Take the position that Schwant is in. Regulations allow it if there's good cause. So you might argue there's not good cause, but I don't hear you arguing that. And that's the point, Your Honor. If we don't know that she's reopening, if she does not say this is the reason, this is the reason why I think I'm going to look at something and retroactively terminate benefits that were awarded over a year ago. If she would have said, here's my authority, I'm reopening, and here is the new and material evidence that I see as a basis. That gives us a possibility of saying, okay, what is the problem and can we address this problem? You'll note that there wasn't really any explanation of what she found as new and material evidence that she could reopen. What she basically had was kind of being upset with the fact that somebody didn't simply pay over the money once they knew that it was an overpayment. I have a factual question for you. The waiver, the district court sent the waiver argument that you say wasn't considered back to the ALJ. What's the status of that right now? Is that- That was a favorable part of the decision for the district judge. It was remanded back to the commissioner. It has not been scheduled. It hasn't been scheduled, okay. I'll reserve the rest of the time, Your Honor, with your permission for rebuttal. You may. Thank you for your argument. Ms. Wormani, Ms. Wormani, we'll hear from you for the acting commissioner, whatever her status might be now. Good morning, and may it please the court. My name is Tracy Wormani, and I represent Nancy A. Berryhill, the acting commissioner of Social Security. Your Honors, as you've just heard, the main issue here is whether the agency properly reopened the 2012 determination that found Ms. Schwant disabled beginning on January 1st, 2012. Now, Ms. Schwant's counsel has urged this court to believe that this is a complicated issue due to the lengthy procedural history. However, the question that this court must answer today is actually quite simple. This court need only determine whether the agency complied with the regulations in the reopening of Ms. Schwant's claim. Before you get there, one of the things that struck me about the facts here, and this may be the basis for why we're hearing the case, is, boy, the agency, whoever was handling this at the lower levels before the appeal, before the ALJ, all over the board. I mean, this is covered, that's not covered. Wait a second, we made a mistake. Let's go back and do this. Here's the wrong date. I mean, it really was sort of a comedy of errors. Does this happen pretty often, and is there any legal significance to that? Sure. I mean, as you know, the agency is a huge agency. We process thousands of these claims every day, and unfortunately, these types of typographical errors do occur. But we found that Ms. Schwant was not at fault. I mean, we've admitted that the typographical error was our fault, and the overpayment waiver issue has already been remanded. So the only issue here is now, did the agency reopen under the regs? The regulations give the agency authority to, on its own initiative, reopen and revise otherwise final determinations, including favorable determinations such as Ms. Schwant's, within four years for good cause. Our regulations state that good cause exists when the agency receives new and material evidence. One additional question on that exact point. Opposing counsel makes the point that res judicata applies in Social Security, and I have experience with workers' compensation, not so much with Social Security so far, and res judicata does not apply in workers' comp and other kinds of disability claims. Does it apply in Social Security? As a general principle, it does. However, here we have a reopening under the regulations. So it's an exception that is based in the regulations. Thank you. Now, contrary to what Ms. Schwant has argued, it is irrelevant how the agency comes to receive the new and material evidence that constitutes good cause to reopen a claim. Here, in connection, again, with Ms. Schwant's overpayment proceedings, the agency received new evidence in 2013 that Ms. Schwant's earnings prior to 2012 may have been subject to a subsidy. Thus, they may not have been substantial gainful work, and that called into question whether the January 1, 2012 onset date in the prior determination was correct. Ms. Schwant, however, has argued that this was post hoc rationalization from agency counsel that was not presented until federal court. However, that is unsupported by the record, which shows that the agency's reasoning for reopening this claim has been clear and consistent throughout. We have a July 2013 statement in the record from an agency employee explaining that she was requesting a reopening of Ms. Schwant's claim due to new and material evidence concerning subsidies. Then we have a second statement dated September 2013 from another agency employee explaining that this was, in fact, a reopening of the claim based on, again, new and material evidence, the language in the regulations concerning income. In her 2015 decision, the ALJ also articulated the good cause that warranted a reopening of the claim. She discussed the subsidies and then pointed to increased earnings in 2013, as well as Ms. Schwant's new statements in 2013 that she had received significant work accommodations. The ALJ explained that this caused her to question Ms. Schwant's abilities both prior to and after January 1, 2012, and she explained that the new evidence concerning income and work activity was, in fact, material to a disability determination. Thus, the agency's reasoning for reopening has been clear and consistent throughout. This is not post-talk rationalization. I would also point out that there is no requirement that the agency use the precise term good cause when it reopens a claim. Ms. Schwant's counsel has not pointed this court to any authority to stand for that proposition. But again, Your Honors, we have the agency employees using the term new and material evidence, and then the ALJ, again, discussed the new evidence and specifically described it as material. So we have both agency employees and the ALJ invoking language that mirrors the language contained in the good cause reopening statute. Thus again, Your Honors, this issue is quite simple. The agency reopened Ms. Schwant's claim within four years for good cause, and that was all that was required to reopen her claim under the regulations. Moving on, with regard to notice, the ALJ here provided Ms. Schwant with sufficient notice of the issues that she intended to consider in her decision. Therefore, no due process violation has occurred, as alleged in Ms. Schwant's brief. The notice does take a little bit of inference. I mean, the second notice is better, but the first notice, the first letter, it's really hard to tell what's going on. Is that a problem? Well, as the district court pointed out, the ALJ, of course, did not use this precise term reopen in her hearing notices. But prior to the hearing, she fully informed Ms. Schwant that her decision would cover the entire scope of the reopened claim. Now, that is the exact notice that is required under the regulations when an ALJ reconsiders issues that were previously decided in a claimant's favor. There is simply no authority that an ALJ cite a rationale for a reopening or provide an explanation for reopening in a hearing notice. The inquiry is whether an ALJ gives the claimant sufficient notice of the issues she intends to consider. And that is precisely what happened in this case. The ALJ, as outlined in our brief, issued Ms. Schwant two hearing notices stating, I'm not going to consider the overpayment issue, but I'm going to consider whether you are disabled. She then reiterated the scope of her decision in a letter to Ms. Schwant's counsel, stating, The relevant period that I will consider is from December 31, 2009 through the date of my decision. The ALJ even postponed the hearing here just to ensure that there was no misunderstanding and that Ms. Schwant had ample opportunity to prepare for her disability hearing. The ALJ's final hearing notice again stated that the relevant period was from December 31, 2009 through the present. And thus, while the ALJ did not use the term reopen, she did clearly inform Ms. Schwant that she was reopening the entire claim, both the unfavorable and the favorable portion that found her disabled beginning in 2012. I would also point out that at the very beginning of the hearing, the ALJ told Ms. Schwant that going forward, potentially, I could find you disabled at an earlier date, at a later date, or not at all. Ms. Schwant was represented by counsel. She stated that her counsel explained this to her and that she understood the risk of proceeding, but elected to move forward with the hearing. Thus, the ALJ in this case provided Ms. Schwant with not only adequate, but repeated notice of the issues that she intended to consider. Again, that is the notice that is required under the regulations when an ALJ considers issues previously decided in a claimant's favor. That is also the adequate notice required according to principles of due process. Here, Ms. Schwant had ample opportunity to prepare for her disability hearing, and therefore, sufficient notice was given and no due process violation has occurred. If there are no questions, I'll conclude, Your Honors. Very well. In sum, Your Honors, again, the agency reopened Ms. Schwant's claim within four years for good cause under the regulations. No more was required to reopen her claim. And as just explained, the ALJ provided Ms. Schwant with adequate notice of the issues that she intended to consider. Therefore, the commissioner would respectfully request that this court uphold the ALJ and district court's decision and deny Ms. Schwant's appeal.  All right. Thank you for your argument. Mr. Fitzsick, you may speak in rebuttal. Well, again, when the commissioner, Your Honors, referred to reopening, it is clear that they did not reopen. They did not say they were going to reopen. And, in fact, when the ALJ decision comes out, she alludes to the fact that there was a reopening, apparently, but that's not what she relies on. She relies on hallux. Now, this is important because the reason that we are going in front of the administrative law judge is to present a defense. And as it's briefed, that is the reason that we were asking for a waiver. The defense allows you to say, well, maybe the defense to getting this overpayment is,  that does not trigger the reopening by itself. And as far as all cases being constructed reopening, I would disagree with that, Your Honor. The cases are clear that unless reopening is requested and actually made a part of the case, you cannot, there's been no case that cited that the government can say, oh, yeah, after the fact, yeah, I guess we did reopen that. It was obviously reopening. No, you have to say that you are reopening, and you should set forth the reasons that you're reopening. So this comes down to the due process claim, and I think the case there is the Blight case. Same situation where the notice, there's a notice that we're going to do this, but there's no explanation of what the authority is or what the person's rights are. And so we would ask that you reverse the decision of the district court in this matter and allow the decision of July 5, 2012 to stand and not be retroactively changed by the commissioner in this case. Thank you, Your Honors. Very well. Thank you to both counsel for the arguments. The case is submitted. The court will file an opinion in due course, and counsel are excused.